Lisa Ann Beasley
5738 Simons Drive
Reno, Nevada 89523
775 300 5867
lab2231@yahoo.com
In Pro Per

FILED ___ RECEIVED ✓
ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

SEP - 8 2021

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF NEVADA

LISA ANN BEASLEY

    Plaintiff,

vs.

WASHOE COUNTY SCHOOL DISTRICT,

    Defendant

Case No.:   3:21-cv-00406

**COMPLAINT AND JURY DEMAND**

COMES NOW plaintiff, in pro per, and hereby complains of defendant as follows:

<u>Jurisdiction, Venue & Jury Demand</u>

1. Plaintiff is a woman, who was previously employed by defendant as a teacher. Plaintiff suffered from disabilities pursuant to several strokes which she sustained in 2016. Plaintiff was employed by defendant in Washoe County, State of Nevada. That is, at almost all relevant times plaintiff was disabled as defined by the ADA. At all relevant times defendant was aware plaintiff was disabled. All, or almost all, acts, statements and omissions herein alleged occurred in Washoe County, State of Nevada. Plaintiff hereby requests a jury trial relative to all issues so triable.

2. Defendant is a governmental entity, i.e., it is a school district operating in one of the 17 counties of Nevada, to wit, Washoe County. Plaintiff worked for defendant for

Page 1

approximately ten years, i.e., until July of 2017, at which time defendant terminated plaintiff's employment, against plaintiff's wishes. At all times herein mentioned defendant has employed in excess of fifteen employees, i.e., defendant employees in excess of two thousand persons for at least twenty weeks per year. At all relevant times defendant has been engaged in the industry of education, which affects commerce among the States. Defendant also receives funding from the United States Government.

3. This Court has subject matter jurisdiction over this case per 28 U.S.C. 1343. The Court has subject matter jurisdiction because plaintiff is a woman, who is alleging she was subject to discrimination, retaliation and/or retaliatory hostility because she incurred disabilities pursuant to sustaining several strokes, i.e., defendant violated 42 U.S.C. sections 1981a, 12101, etc., aka the Americans with Disabilities Act of 1990 (hereinafter "ADA").

4. This Court has venue re this action pursuant to 42 U.S.C. 2000e-5(f)(3) because all, or almost all of the actions, statements and omissions which form the basis for this lawsuit occurred in northern Nevada, i.e., in the geographical area of this judicial District.

### First Cause of Action

### (Disability Discrimination/Failure to Accommodate)

5. Plaintiff hereby incorporates the allegations of paragraphs 1 through 4, inclusive, as well as all other paragraphs herein, as though the same had been fully stated.

6. Plaintiff commenced employment with defendant in 2008 and began teaching in 2014. Plaintiff performed well until her strokes in June, 2016, e.g., plaintiff maintained a clean disciplinary record.

7. Defendant knew, and should have known, plaintiff sustained a severe stroke in June, 2016. For example defendant's supervisor, a Principal at Huffaker Elementary School, at which plaintiff taught 4th and 6th grades, was with plaintiff at Renown Hospital immediately after plaintiff suffered a severe stroke. The Principal assisted plaintiff in completing consent forms for a dangerous drug – intended to ameliorate the effect of severe strokes. Complicated

consent forms are required because the drug can sometimes result in death. Defendant was aware from this encounter, and via communications made by plaintiff, and/or on her behalf of the stroke and of the effects thereof, e.g., loss of memory, disorientation, loss of inhibition, inappropriate conduct and statements, suddenly falling asleep, diminution of cognitive function, etc.

8. Defendant encouraged plaintiff to return to work after her severe stroke of June, 2016, while knowing plaintiff was not fully recovered. Defendant failed and refused to accommodate plaintiff's disabilities, and the attendant symptoms. Defendant issued plaintiff a series of reprimands, warnings, counseling memos and/or admonitions in response to symptoms, e.g., various behaviors and speech which had as their genesis, plaintiff's strokes. Plaintiff's somewhat aberrant behaviors and speech, e.g., moderate insubordination, could easily have been accommodated without causing substantial interference. At all times herein mentioned, plaintiff was capable of performing essential job functions in a competent manner. Plaintiff, pursuant to agreeing to working subsequent to her strokes, repeatedly requested accommodations from defendant. For example, plaintiff requested assistance, reviews of her work which would assist her in remedying any deficiencies, an enhanced sound system to assist plaintiff in speaking with her students (plaintiff had a hard time speaking loudly enough), suggestions which assist plaintiff, etc. Defendant failed to abide by its promises to provide such assistance. Defendant was obligated per the ADA, even without having made specific assurances it would provide said assistance, to provide such. Any diminution or deficiency in plaintiff performance was proximately caused by the failure of defendant to provide required assistance/accommodation. Defendant is therefore estopped from relying upon any such alleged deficiency or diminution as a basis for plaintiff's termination.

9. Alternatively, if defendant believed plaintiff's disabilities could not be reasonably accommodated, the correct course of action, per the ADA, would have been to place plaintiff on leave, paid or unpaid, and allow plaintiff to recover, i.e., allow sufficient time for the

symptoms and difficulties which were caused by plaintiff's strokes to diminish and/or dissipate. Defendant knew plaintiff was actively in the process of healing. Defendant possessed this knowledge because plaintiff provided information to this effect and because defendant had frequent observations which corroborated the information provided by plaintiff and/or which should have provided defendant with an independent basis to arrive at this conclusion.

10. Defendant failed to accommodate plaintiff's disabilities in a number of ways. For instance, on or about August 15, 2016, plaintiff received a verbal reprimand from Principal Susan Novelli because she did not have her voice enhancer around her neck; plaintiff received an October 14, 2016 notification from Principal Novelli for alleged insubordination; allegedly being inefficient; allegedly failing to show improvement in professional training and growth; failure to uphold teacher responsibilities and duties; etc. Defendant refused to inform plaintiff of the results of her December, 2016, annual review, e.g., defendant failed to attempt to constructively improve her work performance, e.g., to redress the difficulties plaintiff was experiencing as the result of her strokes. Defendant engaged in this conduct despite the fact Principal Novelli had specifically agreed to assist plaintiff.

11. Any diminution or deficiency in plaintiff's employment performance were caused by her disability and defendant was aware such deficiencies/performance issues were caused by plaintiff's disabilities, which were in turn caused by her 2016 strokes.

12. On or about June 10, 2017, defendant wrongfully terminated plaintiff's employment, i.e., defendant springboarded off of problems caused by defendant's failure to accommodate plaintiff's disabilities. Defendant did not just fail to accommodate plaintiff's disabilities. Defendant exploited the problems and difficulties plaintiff experienced as the result of having disabilities so as to render plaintiff's job more difficult, i.e., defendant actively impeded plaintiff's ability to perform her job duties. In addition to subjecting plaintiff to excessive scrutiny and unnecessary discipline, and generally failing to accommodate, defendant

engaged in other inappropriate conduct – for instance, defendant spread adverse rumors among the students plaintiff taught.

13. As a direct and proximate result of being subject to failures to accommodate, plaintiff suffered emotional distress, loss of enjoyment of life, loss of sleep and anxiety. Additionally, plaintiff lost her employment and has suffered loss of pay and benefits. It has been necessary for plaintiff to incur costs and retain an attorney to attempt to vindicate her federally protected right to a workplace free of disability discrimination.

## Second Cause of Action
### (Retaliation)

14. Plaintiff hereby incorporates the allegations of paragraphs 1 through 13, as well as all other paragraphs, as though the same were full stated herein.

15. Defendant terminated plaintiff's employment in order to retaliate against her for her opposition to defendant's failures to accommodate her disabilities and/or defendant's discriminatory/hostile acts and/or statements which were directly linked to her disabilities and symptoms thereof.

16. Any diminution or deficiency in plaintiff's work performance was directly and proximately caused by the unlawful hostility defendant directed at plaintiff and which was directly linked to plaintiff's disabilities and/or symptoms thereof. Defendant is therefore estopped from relying upon such as a basis for the termination of plaintiff's employment and/or other adverse acts which were directed at plaintiff.

17. As a direct and proximate result of being subject to retaliation plaintiff lost wages and benefits and otherwise suffered as alleged herein.

## Third Cause of Action
### (Disability-Based Hostile Work Environment)

18. Plaintiff hereby incorporates the allegations of paragraphs 1 through 17, inclusive,

as though the same were fully stated herein.

19. Defendant engaged in a series of hostile acts which caused plaintiff's work environment to become hostile, i.e., to become permeated with disability-related hostility to the point at which plaintiff did experience a hostile work environment. A reasonable person, similarly situated to plaintiff, e.g., suffering under similar disabilities, would likewise have perceived and experienced the work environment to be permeated with disability-related hostility.

20. Defendant rendered plaintiff's work environment hostile through a series of acts, statements and failures to act. This course of conduct included, but was not necessarily limited to, the following: Failure to accommodate plaintiff's disabilities; excessive scrutiny directed at plaintiff; statements by defendant's manager, including the Principal, about plaintiff, disseminated to the students whom plaintiff taught and plaintiff's colleagues, which undermined plaintiff's authority and status and had a tendency to engender additional hostility; a series of admonitions, counseling notices, notifications, warnings, etc., directed at plaintiff and which has as their basis conduct and/or statements which defendant knew, and should have known, were caused by plaintiff's disabilities, i.e., defendant knew and should have known the subject conduct and statements should have been accommodated – instead used such as a basis to render plaintiff's work environment more difficult. That is, defendant effectively sabotaged plaintiff's ability to perform the essential functions of her job.

21. As a direct and proximate result plaintiff was injured and did suffer as described herein.

WHEREFORE, plaintiff requests the following relief:

1. For an award of compensatory damages;

2. For an award of punitive damages sufficient to punish and deter defendant from engaging in similar conduct;

3. For an award of special or actual economic damages, according to proof;

4. For an award of costs and a reasonable attorney's fee; and

5. For injunctive relief to compel defendant to adopt and actually enforce a reasonable policy against disability discrimination and/or disability-based harassment, and for whatever other relief the Court or jury may deem just.

DATED this 8th day of September, 2021.

*Lisa Ann Beasly*
Lisa Ann Beasly
5738 Simons Drive
Reno, Nevada 89523
(775) 300 5867